**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KIM ALLEN,**

       **Plaintiff,**                         **Case No. 2:12-cv-347**
                                              **Judge Gregory L. Frost**
**v.**                                  **Magistrate Judge Abel**

**ANDERSEN WINDOWS, INC., et al.,**

       **Defendants.**

<u>**OPINION AND ORDER**</u>

This matter is before the Court on Defendants' motion to dismiss Plaintiff's complaint and to strike Plaintiff's class action claims. (ECF No. 24.) Also before the Court are Plaintiff's opposition to Defendants' motion (ECF No. 31) and Defendants' reply in support of their motion (ECF No. 33). The Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion.

As more fully described below, the Court (1) finds that part of Plaintiff's claim for breach of express warranty as well as her claim for declaratory judgment survive dismissal under Fed. R. Civ. P. 12(b)(6), (2) declines to strike Plaintiff's class allegations in the Complaint, and (3) dismisses Plaintiff's other claims for failure to state valid claims upon which relief could be granted.

## I.      Background

Plaintiff Kim Allen is a homeowner in Mount Vernon, Ohio. Defendants Andersen Windows, Inc. and Andersen Corporation (collectively, "Andersen") manufacture and sell windows and doors throughout the United States.

1

Allen, whose home was constructed in 1998,[1] had Andersen 400 Series Tilt Wash vinyl-clad windows installed in her home.   The windows came with an express limited warranty,[2] which provided twenty-year coverage for glass and ten-year coverage for products and components other than glass.  (Limited Warranty, ECF No. 24-2, Ex. A.)

At some point following the date on which the windows were installed in her home, Allen noticed dark spots and mold around one of the windows.  Allen contacted Andersen and Andersen sent a representative to Allen's home.  The Andersen representative replaced a window sash that was moldy or otherwise damaged.  Allen alleges that around this time, Andersen informed her that "her house was probably settling and allowing moisture in."  (Compl. ¶ 13, ECF No. 1.)

At some point after Andersen replaced the window sash, Allen noticed dark spots and mold around other windows in her home.  Allen contacted Andersen in late 2008 to request replacement windows and additional replacement sashes.  Initially, Andersen refused to replace the windows or window sashes in Allen's home and continued to suggest that conditions in Allen's home were responsible for the mold.  In mid-2009, however, after Allen contacted Andersen frequently, wrote letters to Andersen's president, and performed a humidity test on her home, Andersen replaced eight moldy window sashes in Allen's home.  The original windows are still installed in Allen's home.

The overriding allegation in Allen's lawsuit is that Andersen defectively designed and/or manufactured the windows in question.  Allen alleges that the windows do not seal properly and

---

[1] The Complaint does not provide the date on which her home was constructed but Andersen asserts, citing public records, that Allen's home was constructed in 1998.  (Defs.' Mot. 4 n.7,  ECF No. 24.)  Plaintiff does not refute this assertion.
[2] Andersen attached the warranty to its motion to dismiss.  (ECF No. 24-2, Ex. A.)  Because the complaint references the express warranty and the warranty is central to Plaintiff's allegations, the Court may consider the warranty without converting Andersen's motion to a motion for summary judgment.  *See, e.g.*, *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

thus expose the interior structure of the windows to moisture.  Allen theorizes that this is potentially caused by Andersen's failure to apply a wood preservative to the windows.  Not only does this alleged defect damage the windows, Allen further alleges that the defective nature of the windows also leads to damage to area surrounding the windows.

Allen alleges that Andersen knew or should have known that its windows were defective but did not publicize this defect to consumers, despite the fact that Andersen could have easily identified the customers who purchased the windows in question.  Allen also alleges that, because Andersen suggested that the conditions in her home (and not the defective windows) caused the mold and/or dark spots to form, she was delayed in discovering the defective nature of the windows.  Allen alleges that she had no reasonable way to discover the defect until shortly before she filed her complaint. Finally, Allen alleges that she would not have purchased the windows if she knew that they were defectively designed and/or manufactured.

Allen filed her complaint in this Court on April 18, 2012.  (Compl., ECF No. 1.)  Allen invokes the diversity jurisdiction of this Court (28 U.S.C. § 1332) and asserts state-law claims for breach of contract (First Claim), breach of express warranty (Second Claim), breach of implied warranties (Third Claim), violations of the Ohio Consumer Sales Practices Act (Fourth Claim), violations of the Ohio Deceptive Trade Practices Act (Fifth Claim), violations of the Ohio Product Liability Act (Sixth Claim), fraudulent concealment and tolling (Seventh Claim), negligent misrepresentation (Eighth Claim), and negligence (Ninth Claim).  Allen also includes a Tenth Claim that seeks declaratory and injunctive relief.

Included in the Complaint are class action allegations, as Allen purports to bring this lawsuit on behalf of herself and similarly situated consumers throughout the United States. Allen seeks certification of a class action, defining her proposed nationwide class as:

> All those persons or entities who currently own or have owned a 400 Series Tilt
> Wash vinyl clad window manufactured or sold by Defendant Andersen
> Corporation that was or is part of a structure physically located in the United
> States with the distinct design and/or manufacturing defect that allows moisture
> intrusion which promotes and elevated moisture content and mold growth,
> accelerated and premature rotting, decay, and deterioration, and overall failure in
> the window system under normal conditions.

Allen also brings her claims on behalf of state sub-classes of consumers, "as applicable to each

of the various states where the laws are similar to each of the states in which Allen resides."

(Compl. ¶ 39.)

Andersen now moves to dismiss the complaint in its entirety under Fed. R. Civ. P.

12(b)(6) for failure to state a claim upon which the Court may grant relief. (ECF No. 24.)

Andersen also moves to strike the class action allegations contained in the Complaint. (*Id.*)

Allen opposes Andersen's motion (ECF No. 31) and the motion is now ripe for adjudication.

## I.      Fed. R. Civ. P. 12(b)(6) Standard

Dismissal under Fed. R. Civ. P. 12(b)(6) is proper if a complaint fails to state a claim

upon which a court can grant relief. To survive a motion to dismiss, a complaint must provide

fair notice of what the claim is and the grounds upon which it rests, and it must set forth

sufficient factual allegations suggesting that the plaintiff is entitled to relief under those claims.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citing *Conley v. Gibson*, 355 U.S. 41,

47 (1957)). A court, in ruling on a Rule 12(b)(6) motion, must construe the complaint in the

light most favorable to the plaintiff and treat all well-pleaded allegations contained therein as

true. *Id*. at 555–56. The defendant bears the burden of demonstrating that the plaintiff has failed

to state a claim for relief. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The

purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a

matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is

true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  If there is an absence of law to support the type of claim made, or if the facts alleged are insufficient to state a valid claim, or if on the face of the complaint there is an insurmountable bar to relief, dismissal of the action is proper. *Little v. UNUM Provident Corp.,* 196 F. Supp. 2d 659, 662 (S.D.Ohio 2002) (citing *Ranch v. Day & Night Mfg. Corp.,* 576 F.2d 697 (6th Cir.1978)).

Fed. R. Civ. P. 8(a)(2) governs pleading standards and requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 does not require "detailed factual allegations," "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Thus, a court need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice to defeat a Rule 12(b)(6) motion to dismiss.  *Id.*  In fact, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  Once the court has identified the well-pleaded allegations, it should view each allegation in the context of the entire complaint to determine whether a plaintiff has alleged sufficient facts to support his or her claim.  *See In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 782 (N.D. Ohio 2011).

Considering only those well-pleaded facts, a complaint must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550

U.S. at 556).  A plaintiff's factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Twombly*, 550 U.S. at 556.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the court should dismiss the complaint.  *Iqbal*, 556 U.S. at 679.

This case also includes allegations of fraud, which are subject to heightened pleading requirements.  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)).  The rule requires that the circumstances of the fraud, and not the evidence of the case, be pleaded with particularity.  *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 n.9 (6th Cir. 1988).  Rule 9(b) may be relaxed when there has been a lack of discovery and the information needed for a plaintiff to achieve particularity is held exclusively by the opposing party—in other words, Rule 9(b) does not require a plaintiff to be omniscient. *Id*.  The main purpose behind Rule 9(b) is to provide the defendant with notice of the plaintiff's claim so that the defendant may prepare an informed responsive pleading.  *Id*. at 679; *Coffey v. Foamex, L.P.*, 2 F.3d 157, 162 (6th Cir. 1993).

The Court must decide substantive questions of state law "in accordance with the controlling decisions of the highest court of the state." *Meridian Mut. Ins. Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir. 1999) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  If the state's highest court has not decided the issue, the Court must predict how that court would resolve it by considering decisions of the state's lower courts, other federal courts construing

state law, secondary sources, and applicable dicta of the state's highest court. *Id.*; *see also Welsh v. Wachovia Corp.*, 191 F. App'x 345, 355–56 (6th Cir. 2006). A court should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. *Meridian Mut. Ins. Co.*, 197 F.3d at 1181.

Finally, it is appropriate to address what materials this Court did *not* consider in ruling upon Andersen's motion to dismiss. Andersen attached to its motion two declarations, with exhibits, and another declaration to its reply in support of the motion to dismiss. (ECF Nos. 24, 33.) As a general rule, it is elementary that the Court does not (and cannot) consider matters outside the four corners of the complaint when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 781 (S.D. Ohio 2009). An exception to this rule is that the court may also consider documents that a defendant attaches to a motion to dismiss if the documents are referred to in the complaint and are central to the plaintiff's claims. *Id.* (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997)). In addition, the court may consider public records and matters of which a court may take judicial notice. *Id.* (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds, *Swierkiewicz v. Sorema*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) and *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)).

Andersen attached a copy of the limited warranty applicable to the windows at issue in Allen's Complaint. Since Allen relies on the warranty as a central part of her claims and does not dispute that the warranty attached to Andersen's motion is the applicable warranty, the Court will consider it in addressing Andersen's motion. The Court will also consider, as a public

7

record, the fact that Allen's home was constructed in 1998, another fact that Andersen has posited in its motion to dismiss and that Allen does not dispute. The remaining factual matters asserted in the declarations and exhibits attached to Andersen's motion and reply, however, are outside the pleadings and will be disregarded.[3]

## II.        Discussion

### A.   Statute of Limitations

Andersen argues for the dismissal of numerous claims asserted in the Complaint based on statute-of-limitations grounds. Dismissal under Fed. R. Civ. P. 12(b)(6) based on a statute-of-limitations bar is appropriate when the complaint shows conclusively on its face that the action is indeed time-barred. *Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F. Supp. 2d 942, 947 n.3 (S.D. Ohio 2003); *see also Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002).

### 1.   Breach of Express Warranty

The Court begins with an analysis of Allen's Second Claim of the Complaint, alleging Andersen's breach of express warranty. The four-year statute of limitations set forth in Ohio Rev. Code § 1302.98(A) applies to claims for property damage arising out of a transaction for a sale of goods. *Westfield Ins. Co. v. HULS Am., Inc.*, 128 Ohio App. 3d 270, 289, 714 N.E. 2d 934 (Ohio Ct. App. 1998). On that much, the parties agree. Their disagreement concerns when the statute of limitation accrues.

Ohio Rev. Code § 1302.98(B) provides:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future

---

[3] Andersen also attached to its motion the complaints in other similar cases filed against Andersen in other jurisdictions. Though these are properly treated as public records, and therefore arguably could be considered in ruling upon Andersen's motion, the Court finds them immaterial to the issues presented in Andersen's motion.

performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

Ohio Rev. Code § 1302.98.  Andersen argues that the statute of limitations on Allen's express warranty claim began to run when the windows were delivered to her, a time that was no later than 1998.  Thus, Andersen argues that Allen should have brought her express warranty claim no later than 2002 and that such claim is therefore time-barred.  For her part, Allen contends that her cause of action accrued when she *discovered* the breach of warranty.  In other words, Allen argues that the statute of limitations was tolled (until 2009, she says) by operation of the exception in Ohio Rev. Code § 1302.98(B).

Whether the discovery rule applies depends upon whether the warranty at issue in this case "explicitly extends to future performance of the goods and discovery of the breach must await the time of performance" within the meaning of Section 1302.98(B).  The express limited warranty applicable in this case states:

> All non-glass portions of windows and patio doors are warranted to be free from defects in manufacturing, materials and workmanship for a period of ten (10) years from the date of first purchase.  During this time, Andersen may elect to either repair or replace any defective Andersen product for you.  If repair or replacement is impractical, Andersen may elect to refund your original product purchase price or the original product retailer's list price (whichever is less).[4]

(Limited Warranty, Defs.' Mot. Summ. J. Ex. 2-A, ECF No. 24-2.)

Allen argues that where, as here, a warranty "guarantees goods for a specific period," the discovery rule of Section 1302.98(B) applies.  (Pls.' Opp. 13, ECF No. 31.)  She relies principally on three cases that have applied the discovery rule in the UCC context.  *See Wells v. Visual Security Concepts, Inc.*, 5th Dist. No. 04-CA-118, 2005-Ohio-4272, at ¶ 26; *Westfield*

---

[4] For the glass components, the warranty period is 20 years.  (Limited  Warranty, Defs.' Mot. Summ. J. Ex. 2-A, ECF No. 24-2.)

*Ins. Co. v. HULS Am., Inc.*, 128 Ohio App. 3d 270, 289, 714 N.E. 2d 934 (Ohio Ct. App. 1998);

*Std. Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 821 and n.17 (6th Cir. 1978).[5]

The issue, however, is not as simple as Allen presents it.  Ohio courts have "grappled

with the meaning" of the "future performance" language in Ohio Rev. Code § 1302.98(B).  *See*

*Zaremba v. Marvin Lumber and Cedar Co.*, 458 F. Supp. 2d 545, 550 (N.D. Ohio 2006) (Boyko,

J.); *Conrad v. Winnebago Indus., Inc.*, No. 2:06-cv-953, 2008 WL 1696950, at *3 (S.D. Ohio

Apr. 9, 2008) (Graham, J.).  While it is true that cases like *Wells* and *Std. Alliance* hold that a

seller's promise to repair or replace defects for a specified time period constitutes a warranty of a

good's "future performance," other courts disagree.  Importantly for our purposes here, cases in

Ohio federal and state courts hold that a promise to repair or replace defects for a specified time

period is simply a *remedy* for the buyer and not a promise of future performance.  *See Zaremba*,

458 F. Supp. 2d at 551; *Allis-Chalmers Credit Corp. v. Herbolt*, 17 Ohio App. 3d 230, 236-37,

479 N.E. 2d 293 (Ohio Ct. App. 1984).

As noted above, the Sixth Circuit held in *Std. Alliance* that an express warranty is a

promise of "future performance" within the meaning of Ohio Rev. Code § 1302.98(B).  *Std.*

*Alliance*, 587 F.2d at 820-21.  But at the time the court decided *Std. Alliance*, there was no Ohio

precedent on point, leaving the court to predict what Ohio courts would do if confronted with the

issue.  *See Zaremba*, 458 F. Supp. 2d at 551 (observing that *Std. Alliance* found no guidance in

Ohio case law with respect to the Ohio Rev. Code § 1302.98(B) issue); *see also Std. Alliance*,

---

[5] Allen also cites cases standing for the Ohio law proposition that a cause of action does not accrue until
(1) the damage occurs *and* (2) the plaintiff can draw some relationship between the damages and the
defendant's conduct.  (Pl.'s Opp. 13-14, ECF No. 31.)  *See, e.g., St. Paul Fire & Marine v. R.V. World,
Inc.*, 62 Ohio App. 3d 535, 542, 577 N.E. 2d 72 (Ohio Ct. App. 1989); *O'Stricker v. Jim Walter Corp.*, 4
Ohio St. 3d 84, 87, 447 N.E. 2d 727 (Ohio 1983).  These cases are inapposite to Allen's express warranty
claim, however, as they deal with the accrual of the statute of limitations in *tort* cases.  Allen's express
warranty claim sounds in *contract*, not tort.  And, in any event, the discovery rule's application in express
warranty cases is governed by the statutory strictures of Ohio Rev. Code § 1302.98(B).

587 F.2d at 821 (noting explicitly, in the context of another state-law issue, that it "must determine what Ohio courts would do if confronted with" the issue).  Six years after *Std. Alliance*, guidance came in the form of *Allis-Chalmers*, an Ohio Court of Appeals decision that interpreted the meaning of "future performance."  And after undertaking a rigorous analysis of the U.C.C., the *Allis-Chalmers* court came to an opposite conclusion to that of the Sixth Circuit.

Like the Sixth Circuit in *Std. Alliance*, the court in *Allis-Chalmers* was faced with an express warranty in which the seller warranted its product to be free of defect for a period of time, but limited its liability under the warranty to an obligation of "repairing or replacing" the defective item.  *See Allis-Chalmers*, 17 Ohio App. 3d at 236; *see also Std. Alliance*, 587 F.2d at 816.  Rejecting the buyer's claim that the express warranty extended to "future performance," the *Allis-Chalmers* court noted the difference in the U.C.C. between "remedies" and "warranties" or obligations.  *Allis-Chalmers* at 236.  And it was that difference that forced the *Allis-Chalmers* court to part ways with the Sixth Circuit's interpretation of Ohio law in *Std. Alliance*:

> As noted in *Standard Alliance Indus.*, *supra*, the repair or replace language would appear to meet the definition of an express warranty as it is a " * * * promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain * * *." [Ohio Rev. Code § 1302.26(A)(1).] However, all promises are not warranties. An express warranty is a promise which requires that the " * * * goods shall conform to the affirmation or promise." *Id*. Here, the promise required that the seller's conduct conform to the promise, not that the product's performance conform to the promise.

*Id.* at 237.

Accordingly, *Allis-Chalmers* rejected the reasoning of *Std. Alliance* and held as a matter of Ohio law that "[a] promise by the seller of goods to 'repair and replace' defective parts for one year is not a warranty extending to future performance under R.C. 1302.98, but is a remedy."  *Id.*

Just six years ago, a decision from the Northern District of Ohio similarly rejected *Std. Alliance* in favor of the *Allis-Chalmers* interpretation of Ohio Rev. Code § 1302.98(B). *Zaremba*, 458 F. Supp. 2d at 550-51. In *Zaremba*, Judge Boyko was confronted with a statute-of-limitations issue related to a breach-of-warranty claim that arose from allegedly defective windows and doors installed in a custom-built home. *Id.* at 547. While there was a dispute as to whether a one-year or ten-year warranty applied the products at issue, the court found the relevant language of the warranties "virtually identical": the limited warranties at issue in that case warranted the products free from defect and obligated the defendant to "repair" or "replace" the defective product during the warranty period. *Id.* at 548. Recognizing that Ohio courts had "grappled" with the issue of how the "repair or replace" language in a limited warranty impacted the accrual of the statute of limitations, Judge Boyko chose to follow the interpretive trail blazed by the *Allis-Chalmers* court instead of the Sixth Circuit's ruling in *Std. Alliance*. *Id.* at 551. Accordingly, Judge Boyko found that the "repair or replace" language in the warranty at issue in *Zaremba* was *not* a warranty of future performance within the meaning of Ohio Rev. Code § 1302.98(B) but, rather, was simply the specification of a remedy for the product's failure to be free from defect. *Id.* Thus, Judge Boyko found that the statute of limitations for the plaintiff's breach-of-warranty action began to run when the subject windows and doors were delivered and expired four years later. *Id.* "The discovery of the defective windows and doors [seven years after they were delivered] does not re-trigger the running of the four-year limitations period. . . ." *Id.*

In this case, the Court agrees with Andersen and finds *Allis-Chalmers* and *Zaremba* to embody the proper interpretation of Ohio law. Simply put, the seller's obligation to repair or replace a defective product for a specified period of time does not constitute a warranty of

"future performance" within the meaning of Ohio Rev. Code § 1302.98(B).  Applying this interpretation of Ohio law, the language in Andersen's limited warranty, when read as a whole, does not warrant future performance within the meaning of Ohio Rev. Code § 1302.98(B).  The obligation expressed by the warranty language is for Andersen to "either repair or replace any defective Andersen product" within the warranty period.  In substance, the obligation is no different than the warranty obligations analyzed by the Ohio court of appeals in *Allis-Chalmers* and Judge Boyko in *Zaremba*.  Like the warranties examined in those cases, the Anderson limited warranty does not guarantee future performance free of defect—it simply warrants that Andersen will repair or replace defective products.  As such, the limited warranty does not trigger the "future performance" exception to the general rule that the four-year statute of limitations accrues at the time of delivery of the product in question.  And because the Andersen windows complained of here were delivered no later than 1998, Allen's express warranty claim is time-barred.

Allen's memorandum in opposition to Andersen's motion to dismiss does not attempt to distinguish *Zaremba* or *Allis-Chalmers*, much less explain how the Andersen warranty at issue in this case somehow extended to the "future performance" of the products alleged to be defective in this case.  Allen simply contends in conclusory fashion that the warranty "guarantees goods for a specific period."  (Pl.'s Opp. 13, ECF No. 31.)  In taking this position, Allen may be relying on the first sentence of the limited warranty, which states that the non-glass portions of Andersen windows and doors "are warranted to be free from defects in manufacturing, materials and workmanship for a period of ten (10) years from the date of first purchase."  But even if the Court were to take this first sentence of the limited warranty in isolation, it does convert the Andersen's warranty into one that "extends to future performance" under Ohio Rev. Code §

13

1302.98(B).  For the discovery rule to apply, the warranty at issue must explicitly extend to future performance *and* discovery of the breach must necessarily await such future performance.  *See Voth v. Chrysler Motor Corp.*, 218 Kan. 644, 545 P.2d 371, 376 (Kan. 1976) (analyzing identical language in Kansas codification of the U.C.C.).  As the *Voth* court explained succinctly, the "future performance" exception is an extremely limited one:

> '. . . Where, for example, seeds are sold and impliedly warranted to produce a specific fruit, the statute of limitations should not begin to run until it can be ascertained that the wrong seeds were sold. If a manufacturer understands that a certain product will be used for a particular purpose and knows that it will be impossible to detect any defects in the goods until a later period, the breach of warranty should not cause the statute to begin to run until it has become possible to ascertain whether there is a defect . . ..' (Vol. 37 Fordham Law Review, Sales Statute of Limitations, p. 249.)

*Id.*, 545 P.2d at 377.  This example bears no resemblance to the situation in the case at bar.  As Allen herself alleges in the Complaint, the defective nature of her windows is a condition that existed at the time the windows were delivered and installed in her home; indeed, the gravamen of her Complaint is that Andersen knowingly sold a defective product.  (Compl. ¶¶ 2-4, 26-31.)  The Court finds nothing about the warranty, the products, or the alleged defect that would *necessarily* require "future performance" before discovery of the breach.

The cases relied upon by Allen do not change the Court's view.  As noted previously, *Std. Alliance* held to the contrary, but was only predicting how Ohio courts would interpret the "future performance" language in Ohio Rev. Code § 1302.98(B).  And *Allis-Chalmers* undermined that prediction just six years later with its holding, grounded in a well-reasoned interpretation of the U.C.C.  *See Zaremba*, 458 F. Supp. 2d at 551 ("This Court must believe, if the Sixth Circuit had the benefit of an Ohio reported appellate decision, directly on point, it would have ruled differently.").  Nor are *Wells* or *Westfield Ins.* persuasive authority.  Notwithstanding the fact that *Wells* is a more recent case than *Allis-Chambers*, the court of

14

appeals' decision there lacks any meaningful analysis of the issue at hand.  And *Westfield Ins.* is not even on point:  that case merely held that the plaintiffs' claim was time barred notwithstanding the discovery rule because they did not discover the defect within the warranty period.  *Westfield Ins.*, 128 Ohio App. 3d at 289.  At best, the court assumed without deciding that the discovery rule applied; the court did not opine on how the warranty at issue extended to "future performance" within the meaning of Ohio Rev. Code § 1302.98(B).

For these reasons, the Court finds that the statute of limitations on Allen's express warranty claim based upon Andersen's alleged failure to deliver products free of defects began to run in 1998 (at the latest) when Andersen tendered delivery of the products at issue.  Thus, to the extent that Allen claims that Andersen breached its express warranty by providing defective windows, such a claim is time-barred.  A claim for breach of express warranty based on the theory that Andersen breached its obligation to provide a product "free from defects in manufacturing, materials and workmanship" had to be brought no later than 2002, four years after the windows were delivered and installed in Allen's home.

Finding this part of Allen's express warranty claim time-barred, however, does not end the discussion.  Allen did not limit her express warranty claim to simply the theory that Andersen failed to deliver windows free of defects.  Specifically, Allen alleges:

> Defendants breached the express warranty in the Class Windows, which were susceptible to water penetration and subsequent damage, contained a latent defect at the time of sale, and otherwise failed to perform as expressly represented by Andersen.  Furthermore, Andersen has failed and refused to honor the terms of the express warranty causing the warranty to fail of its essential purpose, even though Andersen knows that its products were defective.

(Compl. ¶ 62.)  Similarly, Allen alleges elsewhere in the Complaint that Andersen has "refused to replace any of the defective windows" despite their continued failure.  (Compl. ¶ 16.)

15

Based on the allegations in the Complaint, the Court finds that the part of Allen's express warranty claim based on a theory that Andersen failed to comply with the "repair or replace" obligation is not time-barred.  Though acknowledging that Andersen replaced eight window sashes in mid-2009 after Allen complained about the windows, Allen argues that "the whole Window is defective, not just the sash" and that simply replacing the sash does not comply with the terms of the express warranty.  (Pl.'s Opp. 20, ECF No. 31.)

Even though Allen's express warranty claim is time-barred to the extent based on Andersen's alleged failure to provide non-defective windows, Allen's claim that Andersen failed to comply with its obligation to "repair or replace" her windows is *not* time-barred.  As noted above, Andersen's express warranty is not a type that explicitly extends to future performance within the meaning of U.C.C.  But unlike claims for breach of warranty based upon the condition of the product, a claim for breach based upon the failure to "repair or replace" does not accrue upon delivery: "the promise to repair is an independent obligation that is not breached until the seller fails to repair."  *Cosman v. Ford Motor Co*., 285 Ill. App. 3d 250, 674 N.E.2d 61, 68 (Ill. Ct. App. 1996) (analyzing identical U.C.C. provision under Illinois law); *see also Versico, Inc. v. Engineered Fabrics Corp*., 238 Ga. App. 837, 520 S.E.2d 505, 509-10 (Ga. Ct. App. 1999); *Nationwide Ins. Co. v. General Motors Corp*., 533 Pa. 423, 625 A.2d 1172, 1179-81 (Pa. 1993) (Zappala, J., dissenting).  Thus, the four-year statute of limitations on Allen's claim based on Andersen's "repair or replace" obligation did not begin to run until Andersen failed to abide by its obligation to repair or replace.  Construing Allen's factual allegations in the light most favorable to her, Andersen failed to repair or replace (as she contends is necessary) on multiple occasions and as recently as 2008, when she wrote to the company and obtained no response. (Compl. ¶ 15.)  Allen further alleges that in mid-2009, Andersen provided eight replacement

16

sashes, which Allen alleges not to have been a sufficient manner of rectifying the problem with her windows.  (Compl. ¶¶ 15-16, 62.)   Thus, Allen has arguably alleged that Andersen delayed compliance with its obligation under the written warranty until mid-2009, at which time it provided replacement sashes that did adequately satisfy its "repair or replace" obligation. Having filed her Complaint within four years of that, Allen has alleged enough facts at this juncture for the Court to consider her express warranty claim timely filed, to the extent based on Andersen's alleged breach of the "repair or replace" obligation in the limited warranty.

### 2.  Breach of Implied Warranties

Allen's Complaint also alleges claims for breach of implied warranties under the Ohio U.C.C.  (Compl., ¶¶ 64-68 (Third Claim), ECF No. 1.)  Under Ohio law, a seller of goods impliedly warrants that its products are of good and merchantable quality, fit and safe for the ordinary purposes for which the goods are intended.  Ohio Rev. Code § 1302.27 (adopting U.C.C. § 2-314 as Ohio law).  Ohio law also recognizes an implied warranty of fitness for a particular purpose, under which a seller warrants that goods shall be fit for "any particular purpose for which the goods are required," provided that the seller knows or has reason to know of the buyer's "particular purpose."  Ohio Rev. Code § 1302.28 (adopting U.C.C. § 2-315).  For each implied warranty claim, the applicable statute of limitations is four years.  Ohio Rev. Code § 1302.98(A).

Implied warranties, by definition, do not explicitly extend to future performance, thus removing any possibility that the discovery rule of Ohio Rev. Code § 1302.98(B) could toll the limitations period in this case.  *See Std. Alliance*, 587 F.2d at 820; *Gentek Bldg. Prods, Inc. v. Sherwin-Williams Co.*, No. 1:02-cv-13, 2005 WL 6778678, at *10 (N.D. Ohio Feb. 22, 2005). Allen therefore had to bring her claim for breach of the implied warranties within four years of

the time the subject windows were delivered.  Because Andersen delivered the windows no later than 1998, the statute of limitations ran on Allen's implied warranty claims sometime in 2002.[6]

### 3. Breach of Contract

Separate from her breach-of-warranty claims, Allen's Complaint also alleges a claim for breach of contract.  The gravamen of this claim is that Andersen breached its sales contract with Allen by providing unsatisfactory windows that "failed to acceptably perform."  (Pl.'s Opp. 19, ECF No. 31.)

Even though Allen may have pleaded a breach-of-contract claim separate from her warranty claims, the claim cannot evade the statute of limitations.  Under Ohio Rev. Code § 1302.98(A), a breach of contract claim related to a sales contract must be brought within four years after the claim accrued.  And Ohio Rev. Code § 1302.98(B) provides that the claim accrues *when the breach occurs*, regardless of the aggrieved party's lack of knowledge of the breach.  So Allen's claim accrued at the time Andersen delivered the windows to her; there is no discovery rule applicable to her breach-of-contract claim.  Accordingly, just as most of Allen's breach of warranty claims are time-barred for having failed to be brought within four years of the time of delivery, so too is Allen's claim for breach of contract.

---

[6] The discovery rule may operate to toll the statute of limitations applicable to a claim for breach of an implied warranty *in tort*, a legal theory that Ohio law recognizes.  *See In re Porsche Cars N. Am.*, 2012 WL 2953651, at *55; *see also Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 49-50, 537 N.E. 2d 624 (1989).  But Allen cannot invoke this theory for two reasons.  First, she explicitly alleged a claim for breach of the implied warranty *of merchantability*, which is a claim based grounded in contract principles and subject to the provisions of the U.C.C.  *In re Porsche Cars N. Am.*, at *55.  Second, a claim for implied warranty in tort is available only to remote purchasers who are *not* in privity with the seller.  *Id.* (citing *Chemtrol Adhesives*).  Allen's Complaint does not allege that she is a remote purchaser; indeed, the tenor of the Complaint is that she purchased the windows in question from Andersen and is therefore in privity of contract with Andersen.  (Compl., §§ 12, 34.)

### 4. Ohio Consumer Sales Practices Act

Allen's Fourth Claim alleges a violation of the Ohio Consumer Sales Practices Act ("CSPA"), based on the theory that Andersen "induced" her (and the members of her proposed class) to purchase defective Andersen products. (Compl. ¶¶ 70-71, ECF No. 1.) Andersen argues that Allen's CSPA claim is barred by the CSPA's two-year statute of limitations. *See* Ohio Rev. Code § 1345.10(C). Indeed, there is no discovery rule applicable to CSPA claims, meaning that any claim for damages under the CSPA is time barred in this case. *See Jackson v. Sunnyside Toyota, Inc.*, 175 Ohio App. 3d 370, 2008-Ohio-687, 887 N.E. 2d 370, at ¶¶ 8-9; *see also Bucy v. Aurora Loan Servs., LLC*, No. 2:10-cv-1050, 2011 WL 1044045, at *2 (S.D. Ohio Mar. 18, 2011) (noting that the CSPA has no discovery rule; "the two-year statute of limitations is absolute").

In response to Andersen's argument, Allen notes that the "absolute" two-year statute of limitations applies to actions for money damages and not to "equitable claims." (Pl.'s Opp. 14, ECF No. 31.) And a close reading of Allen's Complaint confirms that she seeks "equitable relief" including "injunctive relief," "equitable restitution, accounting, and other relief." (Compl. ¶ 72.) While conceding that her damage claims under the CSPA are time-barred, Allen contends, citing Ohio Rev. Code § 1345.09(C)(1), that her claims for equitable relief should survive because the CSPA applies a discovery rule for equitable claims. (Pl.'s Opp. 14.) Allen's argument reads too much from the statute upon which she relies. Ohio Rev. Code § 1345.09(C)(1) states that "in any action *for rescission*, revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the consumer transaction." (Emphasis added.) Thus, the discovery rule applies only to CSPA claims seeking

19

*rescission* as a remedy.  *See Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 266 (6 th Cir.

2005) (citing *Cypher v. Bill Swad Leasing Co.*, 36 Ohio App. 3d 200, 202, 521 N.E. 2d 1142

(Ohio Ct. App. 1987)).  Because Allen's Complaint does not seek rescission as a remedy, she

cannot invoke the discovery rule to toll the CSPA statute of limitations.

The Court is cognizant of the fact that the Allen's CSPA claim is arguably open ended in

that it seeks equitable relief "in such form as the Court may deem appropriate" and purports to

specify certain types of equitable relief without limitation on other forms that the Court may

award.  (Compl. ¶ 72.)  But this Court does not read the Complaint to be seeking rescission.  The

rescission remedy under the CSPA requires a plaintiff to revoke the transaction at issue "within a

reasonable time after the consumer discovers or should have discovered the ground for it and

before any substantial change in condition of the subject of the consumer transaction."  Allen's

Complaint pleads nothing of the sort.  If Allen was truly seeking rescission of the transaction,

particularly in light of the specificity she has pleaded her other claimed remedies, it stands to

reason that she would have sought rescission explicitly or, at the very least, pleaded facts to

establish that she is, in fact, seeking a rescission remedy.  The Complaint does not do so; to the

contrary, it is evident that Allen is seeking damages and other forms of equitable relief applicable

to the class she seeks to certify.

### 5.   Ohio Product Liability Act and Negligence

Allen's Sixth Claim and Ninth Claim allege, respectively, violation of the Ohio Product

Liability Act ("OPLA") and negligence.  Specifically, Allen alleges that Andersen's windows

were defective in manufacture, design, and due to inadequate warning of risk or damage.

(Compl. ¶¶ 78-80.)  Ohio Rev. Code §§ 2307.74, 2307.75, 2307.76.  Andersen argues that these

claims are barred by the two-year statute of limitation codified at Ohio Rev. Code 2305.10(A).

Alternatively, Andersen argues that Allen's claims are barred in any event by the ten-year statute of repose found at Ohio Rev. Code § 2305.10(C).

As to the two-year statute of limitations, Allen opposes dismissal based on two theories. First, she claims that the discovery rule applicable to tort claims delayed the accrual of her OPLA and negligence claims. Second, Allen claims that the "continuing injury" doctrine applies here. Neither theory can save Allen's claim for a statute-of-limitations bar.

Under Ohio law governing tort claims based upon a latent defect or property damage, the statute of limitations does not begin to run until (1) actual damage occurred and (2) the plaintiff can draw some relationship between the damage and Andersen's conduct. *See St. Paul Fire & Marine*, 62 Ohio App. 3d at 76-77. Allen argues that "because of Defendants' repeated attempts to conceal the defect in the Windows, Plaintiff was unable to draw a relationship between the damage and the conduct of Defendants." (Pl.'s Opp. 15, ECF No. 31.)

Allen's argument fails, however, because the Complaint definitively shows that she *did* draw a relationship between the alleged defect in her windows and Andersen's conduct. Allen alleges that she contacted Andersen *in late 2008* to obtain replacement windows for those damaged by mold and also "wrote a letter to the president of the company complaining about the issue." (Compl. ¶ 15.) After receiving no response, Allen alleges she wrote *another* letter. (*Id.*) Allen's complaints finally led to Andersen agreeing to provide replacement window sashes *in 2009*. (*Id.*) By way of these allegations, Allen has effectively pleaded herself out of the discovery rule she seeks to invoke. Allen's complaints to Andersen in 2008 about the issues with her windows and her demands for replacement windows show that (1) Allen's windows were damaged and (2) Allen suspected that the mold was due to Anderson's conduct (*i.e.*, manufacturing or designing a defective product). So even if the Court indulges Allen's claim

that the discovery rule should apply to he claims, the statute of limitations began to run no later than late 2008 when Allen complained to Andersen that its windows were defective.  Thus, the statute of limitations expired in late 2010 (at the latest), more than one year before Allen commenced this action.

Allen's argument based upon the "continuing tort" doctrine fares no better.  Under this doctrine, "the defendant's *tortious activity* is ongoing, perpetually creating fresh violations of the plaintiff's property rights.  The damage caused by each fresh violation is an additional cause of action."  *Creech v. Brock & Assocs. Constr.*, 183 Ohio App. 3d 711, 2009-Ohio-3930, 918 N.E. 2d 541, at ¶ 16 (emphasis added).  Allen  invokes this rule based on the notion that the allegedly defective windows "remain in her home and are continuing to damage the property."  (Pl.'s Opp. 15, ECF No. 31.)  But this argument conflates the distinct issues of defendant's tortious activity and  the injury caused by it.  For the continuing tort doctrine to apply, it is the *tortious act itself* that must be continuing, not the injury or harm caused by past conduct.  *Sexton v. City of Mason*, 117 Ohio St. 3d 275, 2008-Ohio-858, 883 N.E. 2d 1013, at ¶ 41.  In other words, "the determinative question centers upon the nature of the defendant's tortious conduct, not upon the nature of the damage caused by that conduct."  *Id.* (citation and internal quotations omitted).

In this case, Allen alleges only that the *injury* is continuing, not the tortious conduct itself.  Allen's product liability claim is based on the theory that a defect existed in her windows from the time they were delivered to her and installed in her home.  She has alleged ongoing injury, not an ongoing tort.  Thus, Allen cannot rely on the continuing tort doctrine to toll the running of the statute of limitations.

Even if Allen's claim did not accrue more than two years before she filed suit, Andersen argues in the alternative that the statute of repose in Ohio Rev. Code § 2305.10(C)(1) bars her

claim.[7]  But because this Court finds that Allen's Complaint alleges facts to show that her claims accrued in late 2010, the statute of repose does not come into play.   By its terms, the statute of repose applies only if the claim in question has *not* accrued.  *See Jones v. Walker Mfg. Co.*, 8th Dist. No. 97301, 2012-Ohio-1546, at ¶ 5.  It is the statute of limitations that bars Allen's OPLA claim, not the statute of repose.

### 6.   Negligent Misrepresentation

Allen's Eighth Claim attempts to state a claim for negligent misrepresentation.  Allen alleges that Andersen represented that the windows in question "were treated so as to prevent water penetration, premature rot, and decay" when Andersen either (1) knew that the window components were not so treated or (2) did not know whether they were so treated, yet recklessly represented that they were.  (Compl. ¶ 91.)  Allen alleges that Andersen made these misrepresentations "with intent to induce" her to purchase Andersen windows.  (*Id.* ¶ 92.)

Allen's Complaint does not provide specifics in terms of who made the alleged false statements and when they made them.  But as Andersen notes in its motion to dismiss, Allen alleges (albeit in conclusory fashion) that the misrepresentations induced her to *purchase* the Andersen windows.  (Defs.' Mot. 19, ECF No. 24 (citing Compl. ¶¶ 92-93).)  Thus, based on a fair reading of Allen's Complaint, the alleged misrepresentations upon which Allen relied must have occurred (in Allen's case) in 1998, if not sooner.  (Defs.' Mot. 19, ECF No. 24.)  Based on that timing, Andersen argues that the four-year statute of limitations set forth in Ohio Rev. Code

---

[7] Ohio Rev. Code § 2305.10(C)(1) provides: "Except as otherwise provided in divisions (C)(2), (3), (4), (5), (6), and (7) of this section or in section 2305.19 of the Revised Code, no cause of action based on a product liability claim shall accrue against the manufacturer or supplier of a product later than ten years from the date that the product was delivered to its first purchaser or first lessee who was not engaged in a business in which the product was used as a component in the production, construction, creation, assembly, or rebuilding of another product."

2305.09(D) bars Allen's negligent misrepresentation claim.  *See Lasmer Indus., Inc. v. AM Gen.,*
*LLC*, 741 F. Supp. 2d 829, 836 (S.D. Ohio 2010) (noting that Ohio courts apply four-year statute
of limitations to negligent misrepresentation claims).

 In response, Allen does not dispute that the four-year statute of limitations applies.  (Pl.'s
Opp. 16, ECF No. 31.)  Nor does she dispute Andersen's characterization of her claim or the
notion that the misrepresentations that allegedly induced her to purchase the windows in question
occurred in 1998 or sooner.  (*Id.*)  Allen argues, however, that the statute of limitations does not
bar her claims because the discovery rule applies.  Specifically, Allen cites the language of Ohio
Rev. Code § 2305.09 specifying that a fraud claim does not accrue until the complainant has
discovered the fraud.  (*Id.*)

 Allen cites no Ohio case standing for the proposition that the discovery rule set forth in
Ohio Rev. Code § 2305.09 applies to a negligent misrepresentation claim.  Indeed, the language
of the statute specifically refers to the discovery rule being applicable only to actions "for
trespassing under ground or injury to mines," actions "for the wrongful taking of personal
property," and actions "for fraud."  Ohio Rev. Code § 2305.09.  Because of the statute's
specificity, federal and state courts in Ohio have found that the discovery rule does *not* apply to
claims for *negligent* misrepresentation.  *See, e.g., Lasmer Indus.*, 741 F. Supp. 2d at 836-37; *Neff*
*v. Std. Fed. Bank*, No. 2:06-cv-856, 2007 U.S. Dist. LEXIS 71976, at *16-17 (S.D. Ohio Sept.
27, 2007); *Orshoski v. Krieger*, 6th Dist. App. No. OT-01-009, 2001 Ohio App. LEXIS 5018, at
*15 (Ohio Ct. App. Nov. 9, 2001); *Chandler v. Schriml*, 10th Dist. No. 99AP-1006, 2000 Ohio
App. LEXIS 2209, at *11 (Ohio Ct. App. May 25, 2000).  Allen gives this Court no reason to
depart from the holdings of these cases.  The Court therefore finds Allen's negligent
misrepresentation claim to be time-barred.

24

### 7.   Estoppel to Plead Statute of Limitations

In anticipation of the statute of limitations defense that Andersen raises in the motion to dismiss, Allen's Complaint contains a preemptive strike.  In a section of the Complaint titled "Fraudulent Concealment and Tolling," Allen alleges that Andersen "knew or reasonably should have known the Class Windows were defective prior to the time of sale, and intentionally concealed that material information and the truth concerning their product from Plaintiff and the general public, while continually marketing the Class Windows as a dependable product." (Compl. ¶ 49, ECF No. 1.)  Because of the "fraudulent concealment" of the fact that Andersen's windows were defective, Allen alleges that she was "not reasonably able to discover" that her windows were defective until "shortly before" she filed the Complaint in this action.  (*Id.*, ¶¶ 49-51.)

Andersen takes the position that Ohio law does not recognize "fraudulent concealment" as a basis upon which to toll a statute of limitations.  (Defs.' Mot. 19, ECF No. 24.)  This may not be an accurate statement of Ohio law, however:  "under limited circumstances Ohio recognizes that the concealment of a cause of action can toll the statute of limitations."  *Phelps v. Lengyel*, 237 F. Supp. 2d 829, 836 (N.D. Ohio 2002) (citing *Baldridge v. Toombs*, 23 Ohio Op. 2d 404, 189 N.E.2d 177, 180 (Ohio C.P. 1962)); *see also Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-cv-18, 2006 U.S. Dist. LEXIS 83968, at *19 (N.D. Ohio Nov. 17, 2006); *Bryant v. Doe*, 50 Ohio App. 3d 19, 22, 552 N.E. 2d 671, 675 (Ohio Ct. App. 1988).  The point is academic in this case, however, as Allen disclaims the notion that she is invoking the doctrine of fraudulent concealment to "toll" the statute of limitations in this case.  (Pl.'s Opp. 16, ECF No. 31.)  Rather than argue for tolling due to "fraudulent concealment," Allen argues that the doctrine of *equitable estoppel* prevents Andersen from relying on the statute of limitations

25

defense to bar her claims in this case.  (*Id.*)  *See Thornton*, 2006 U.S. Dist. LEXIS 83968, at *20-21 (acknowledging that equitable estoppel is a distinct doctrine from equitable tolling of a statute of limitations).

State law governs the application of equitable estoppel to state-law claims.  *Walburn v. Lockheed Martin Util. Servs., Inc.*, 443 F. App'x 43, 47 (6th Cir. 2011).  Under Ohio law, the doctrine of equitable estoppel precludes a defendant from using the statute of limitations as a defense when the defendant's conduct induced the delay in filing the action.  *JRC Holdings, Inc. v. Samsel Servs. Co.*, 166 Ohio App.3d 328, 2006–Ohio–2148, 850 N.E.2d 773, at ¶ 28.  A plaintiff must prove four elements to show that the doctrine applies: (1) that the defendant made a factual misrepresentation; (2) that the misrepresentation misled the plaintiff; (3) that the misrepresentation induced the plaintiff to reasonably and justifiably rely on it by delaying the filing of the action until after the expiration of the statutory period; and (4) that the reliance caused detriment to the plaintiff.  *Id.*  Ohio cases have held that when applied to a limitations defense, a plaintiff must show that the defendant misrepresented the length of the limitations period, promised a better settlement if the plaintiff did not bring suit, or made similar representations to induce a delay in bringing suit.  *Id.  See also Walburn*, 443 F. App'x at 48-49 (citing *Helman v. EPL Prolong, Inc.*, 139 Ohio App. 3d 231, 743 N.E. 2d 484, 495 (Ohio Ct. App. 2000)).  A court may resolve the issue of equitable estoppel's applicability on a Rule 12(b)(6) motion to dismiss if the plaintiff has not pleaded facts that, if proved, demonstrate the defendant's efforts to prevent the plaintiff from filing suit.  *See Doe v. Archdiocese of Cincinnati*, 116 Ohio St. 3d 538, 2008-Ohio-67, 880 N.E. 2d 892, at ¶  8.

Allen cites paragraphs 1, 3, 4, 7, 27, 29, 30, and 33 of her Complaint as setting forth the basis for her reliance on the equitable estoppel doctrine.  But none of these paragraphs, whether

taken individually or collectively, plead sufficient facts to (if proven) show that equitable estoppel applies here.  As described by Allen herself in her opposition to Andersen's motion to dismiss, these paragraphs allege that "Defendants had reason to know about serious defects in its Windows."  (Pl.'s Opp. 17, ECF. No. 31 (citing Compl. ¶¶ 1, 3, 4, 7, 27, 29, 30, and 33).)  And in the section of the Complaint specifically devoted to pleading her equitable estoppel theory of avoiding the statute of limitations, Allen alleges that Andersen should be equitably estopped due to "acts of fraudulent concealment," including "failing to disclose that their Windows were defectively manufactured and would deteriorate in less than their expected lifetime, leading to damage to the properties on which the Windows were installed."  (Compl. ¶ 49.)

        The problem with these allegations is that they describe a factual basis for certain claims for relief, but *not* a basis for applying *equitable estoppel* related to the statute of limitations.  "In order to apply the doctrine to the statute of limitations, a party must show that the misrepresentation 'was calculated to induce a plaintiff to forgo the right to sue.'"  *Hoeppner v. Jess Howard Elec. Co.*, 150 Ohio App. 3d 216, 2002-Ohio-6167, 780 N.E. 2d 290, at ¶ 43 (quoting *Welfley v. Vrandenburg*, 10th Dist. No. 95APE11–1409, 1996 WL 145467 (Ohio Ct. App. Mar. 29, 1996)); *see also Walburn*, 443 F. App'x at 49 (observing that Ohio courts have "narrowed the kind of misrepresentation that must be alleged in order to invoke equitable estoppel"; the misrepresentation must be of a kind that induces a plaintiff to forgo filing suit).  Allen has alleged, at most, that Andersen engaged in acts and omissions that concealed defects in Andersen's windows and that Allen (and others similarly situated to her), as a result, could not detect the latent defects until those defects manifested themselves.  (Compl. ¶ 50.)  But the Complaint is devoid of any allegation that Andersen made a misrepresentation that induced her to *forgo filing suit*, which is the sine qua non of equitable estoppel as it relates to estoppel to rely

on the statute of limitations as a defense.  *Doe*, 116 Ohio St. 3d 538, 2008-Ohio-67, 880 N.E. 2d 892, at ¶ 8; *see also Kegg v. Mansfield*, 5th Dist. No. 2000CA311, 2001 WL 474264, at *5 (Ohio Ct. App. Apr. 30, 2001) (rejecting application of equitable estoppel when the alleged misrepresentations related to the merits of plaintiff's claim and were "in no way related to misrepresentations concerning the statute of limitations or a promise of settlement").

Allen has failed to plead sufficient facts to support application of the equitable estoppel doctrine.  Accordingly, Andersen is not estopped to raise the statute of limitations as a defense to the claims analyzed above.

### B.  Merits of Express Warranty Claim

As detailed above, Allen's Second Claim for breach of express warranty—to the extent based upon Andersen's alleged failure to abide by its "repair or replace" obligation—survives a statute-of-limitations bar.  Andersen additionally argues for dismissal, however, on the basis that Allen fails to state an express warranty claim on the merits.  Andersen's arguments are not well-taken.

First, Andersen argues that the limited warranty has expired.  Because the warranty had a ten-year term that began running from the 1998 purchase and installation of the windows in Allen's home, Andersen argues that the warranty expired in 2008 and that the Complaint therefore fails to plead an actionable breach.  For her part, Allen argues that she is not hamstrung by the ten-year term of the limited warranty because that warranty is not the only basis of her claim.  Citing Ohio Rev. Code § 1302.26 (codifying § 2-313 of the U.C.C.), Allen says that "[a]ny factual affirmation of goods" is enough to form an express warranty.  (Pl.'s Opp. 19, ECF No. 31.)

The Court rejects Allen's argument.  In neither the Complaint nor her opposition to the motion to dismiss does Allen specify what "factual affirmation of goods" she relies upon *other* than the Andersen's written limited warranty.  Indeed, in pleading her express warranty claim, Allen identifies only the limited warranty as the basis of her claim.  (Compl. ¶¶ 59-62.) Accordingly, the Court finds that Allen has pleaded an express warranty claim based only upon Andersen's written limited warranty.

Nonetheless, the Court cannot agree with Andersen that the warranty necessarily expired before the windows allegedly failed.  According to Allen's Complaint, she contacted Andersen on multiple occasions seeking replacement sashes for those that were damaged.  (Compl. ¶¶ 13-15.)  According to the Complaint, Andersen replaced window sashes on at least two occasions, the latest one occurring in mid-2009 after Andersen had initially refused in 2008 to provide replacements.  (*Id.*)  Based on these allegations, Allen has alleged enough facts at the time being to rebut a claim that the limited warranty necessarily expired prior to the time of the alleged breach.

Andersen also argues that Allen's express warranty claim is barred because there has been no breach.  Because the Complaint alleges that Andersen replaced the sashes on the windows Allen complained of (Compl. ¶ 15), Andersen alleges that it performed all it was required to do under the terms of the limited warranty.  (Defs.' Mot. 24, ECF No. 24.)  While Andersen may have performed this "fix," however, that act does not, in and of itself, establish that Andersen is insulated from a breach-of-warranty claim.  Allen alleges that the replacement of the window sashes did not rectify the problem: according to Allen the windows "are failing and continuing to fail" notwithstanding Andersen providing new sashes.  (Compl. ¶ 16.)  And as Allen argues in opposition to Andersen's motion, "[b]ecause the whole Window is defective, not

just the sash, replacing the sash did not cure the problem."  (Pl.'s Opp. 20, ECF No. 31.)

Andersen therefore cannot obtain dismissal at the pleading stage based on the notion that it fully

performed its "repair or replace" obligation under the terms of the limited warranty.

       Nor is the Court persuaded by Andersen's argument that dismissal is appropriate for

Allen's failure to provide "adequate notice" of a breach of warranty.  Citing *St. Clair v. Kroger

Co.*, 581 F. Supp. 2d 896 (N.D. Ohio 2008), Andersen argues that a breach of warranty claim

must be dismissed if the plaintiff "fails to plead pre-litigation notice."  *Id.* at 902; *see also* Ohio

Rev. Code § 1302.65.  While this may be an accurate statement of the law, the Court disagrees

that Allen has failed to adequately plead notice.  The Complaint alleges in various places that

Allen contacted Andersen on multiple occasions to complain about the failure of her windows.

Though Allen is often unspecific in her description of whom she contacted, how she did so, or

when she did, these shortcomings in detail (though fatal to a fraud claim under Fed. R. Civ. P.

9(b)) are not fatal to the notion that she has pleaded notice.  The reasonableness and adequacy of

notice to Andersen is an issue for another day; for now, Allen has pleaded enough to escape

dismissal on this ground.  *See Chemtrol Adhesives*, 42 Ohio St. 3d at 51 (noting that the

adequacy of notice and reasonable time of notice are ordinarily questions of fact); *see also

Kabco Equip. Specialists v. Budgetel, Inc.*, 2 Ohio App. 3d 58, 61, 440 N.E. 2d 611 (Ohio Ct.

App. 1981).

       Finally, Andersen argues that dismissal of Allen's express warranty claim on the merits is

appropriate because the incidental and consequential damages she seeks are not recoverable

under the express terms of the limited warranty.  The Court need not reach this issue, however,

as it is not a valid ground for dismissal under Fed. R. Civ. P. 12(b)(6).  As the Court has already

found, Allen has stated a cognizable claim for relief based on the theory that Andersen has not

performed its "repair or replace" obligation under the warranty in question.  The damages, if any, to be awarded for such a breach, if ultimately proven by Allen, is a question of remedy.  It is premature at this juncture to dismiss Allen's claim in its entirety based on the issue of what remedy she may or may not be able to recover.

### C. Ohio Deceptive Trade Practices Act

In her Fifth Claim, Allen purports to allege a violation of the Ohio Deceptive Trade Practices Act ("ODTPA"), codified at Ohio Rev. Code § 4165.01 *et seq*.  Andersen argues that Allen's ODTPA claim is not cognizable as a matter of law because she lacks standing to bring it. More specifically, Andersen argues that only persons damaged or injured in their "business, vocation, or occupation" are proper plaintiffs under the ODTPA.  (Defs.' Mot. 28, ECF No. 24.) *See* Ohio Rev. Code §§ 4165.01(D) and 4165.03(A); *see also Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 698 (S.D. Ohio 2012).  Because Allen has not alleged herself to have been engaged in a "business, vocation, or occupation" with regard to her purchase and installation of the windows at issue in this case, Andersen contends that the Court should dismiss the ODTPA claim for lack of standing.

For her part, Allen disputes Andersen's statutory interpretation, relying on *Bower v. Int'l Bus. Machs., Inc.*, 495 F. Supp. 2d 837 (S.D. Ohio 2004), for the proposition that the ODTPA does not exclude consumers like her from the universe of plaintiffs who have standing to bring an ODTPA claim under Ohio law.  Just five months ago, however, this Court rejected the *Bower* holding in *In re Porsche Cars N. Am., Inc.*, No. 2:11-md-2233, 2012 WL 2953651 (S.D. Ohio July 19, 2012).  In *In re Porsche*, this Court followed the lead of *Dawson v. Blockbuster, Inc.*, 8th Dist. No. 86451, 2006-Ohio-1240, in which an Ohio court of appeals held that the ODTPA "protects the interests of a purely commercial class that does not include individual consumers."

*In re Porsche*, 2012 WL 2953651, at *63 (citing *Dawson*); *see also Dawson*, at ¶¶ 23-25.  The Court sees no reason to depart from its holding in *In re Porsche*.  The Court therefore dismisses Allen's ODTPA claim.

### D.  "Fraudulent Concealment"

Allen's Seventh Claim is titled "fraudulent concealment and tolling."[8]  Allen alleges in this claim that Andersen "actively concealed" the defects in the windows in question by taking "active and affirmative steps to prevent Plaintiff from learning about the defective nature of the Class Windows, including keeping their internal knowledge and communications about the windows secret and non-public."  (Compl. ¶ 83.)  Allen further alleges that Andersen "repeatedly" assured her that the windows were *not* the reason for the damage caused to the product and to the area around the windows.  (*Id.*, ¶ 84.)

As an initial matter, the Court finds it necessary to clarify what the nature of Allen's Seventh Claim actually is.  Allen styles the Seventh Claim as one for "fraudulent concealment."  A cognizable claim for "fraudulent concealment" under Ohio law requires a plaintiff to show (1) a concealment of a fact when there is a duty to disclose; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Koyo Corp. of USA v. Comerica Bank*, No. 1:10-cv-2557, 2011 WL 4540957, at *6 (N.D. Ohio Sept. 29, 2011) (citing

---

[8] Under the Seventh Claim, Allen alleges that Andersen's "fraudulent concealment" of the defect(s) in Allen's windows should toll the statute of limitations under the doctrine of "equitable tolling."  (Compl. ¶ 87, ECF No. 1.)  As noted previously, however, Allen expressly disclaimed any reliance on equitable *tolling* based on fraudulent concealment; rather, Allen argues that the doctrine of equitable *estoppel* precludes Andersen from invoking the statute of limitations.  (*Ante* at 23; Pl.'s Opp. 16-17, ECF No. 31.)

*Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 462 N.E.2d 407, 409 (Ohio 1984)).  A party can be liable for any material omissions if it has a duty to speak.  *Id.* (citing *Schulman v. Wolske & Blue Co., L.P.A.*, 125 Ohio App.3d 365, 708 N.E.2d 753, 758 (Ohio Ct.App.1998)).  Thus, a claim based on "concealment" must allege an underlying duty to disclose.  *See Spears v. Chrysler, LLC*, No. 3:08-cv-331, 2011 WL 540284, at *9 (S.D. Ohio Feb. 8, 2011).  "A duty to disclose arises only in limited circumstances, such as where there is relationship in which 'one party imposes confidence in the other because of that person's position, and the other party knows of this confidence.'"  *Id.* (quoting *Central States Stamping Co. v. Terminal Equip. Co., Inc.*, 727 F.2d 1405, 1409 (6th Cir.1984)).  Absent an allegation of a duty to disclose, dismissal of a plaintiff's claim for "fraudulent concealment" is appropriate for failure to state a valid claim for relief.  *See, e.g., Loyd v. Huntington Nat'l Bank*, No., 1:08-cv-2301, 2009 WL 1767585, at *13 (N.D. Ohio June 18, 2009); *see also Spears* at *9 ("if a complaint alleges concealment, it must also allege an underlying duty to speak").

Allen appears to be alleging a fraud claim, at least in part, based on a "concealment" theory.  In paragraph 83 of the Complaint, Allen alleges:  "The Defendants actively concealed the fact that the Class Windows caused (or will cause) injury to the property of the Plaintiffs [*sic*] and Class.  The Defendants took active and affirmative steps to prevent Plaintiff from learning about the defective nature of the Class Windows, including keeping their internal knowledge and communications about the windows secret and non-public."  Allen does not, however, allege the requisite relationship between her and Andersen that would have given rise to a duty to speak.  Accordingly, to the extent Allen relies solely on acts of concealment by Andersen as the basis of her Seventh Claim, the claim is dismissed for Allen's failure to state a valid claim for relief.

But when the Court parses the allegations in Allen's Seventh Claim, it becomes evident that (despite her labeling of the claim) Allen is *not* alleging simply a fraudulent *concealment* claim.  Allen is also alleging a claim for simple *fraud*, based on the theory that Andersen made affirmative misrepresentations upon which she relied:

> Each time Defendants replaced a window sash, Plaintiff was repeatedly assured that the source of the damage was *not* the Class Windows.  As such, Plaintiff did not discover the fact that the Windows were, in truth, defective and the source of the mold damage.

(Compl. ¶ 85, ECF No. 1.)

The Court construes this allegation as one sounding in fraud and not "fraudulent concealment."  Accordingly, notwithstanding Allen's failure to plead the requisite facts to support a duty to disclose in a fraudulent concealment context, the Court proceeds to analyze whether she has pleaded a fraud claim that can survive dismissal.

In support of dismissal, Andersen argues that Allen has not pleaded fraud with the requisite particularity required under Fed. R. Civ. P. 9(b).  In cases alleging fraud, the Court considers this particularity requirement against Fed. R. Civ. P. 8(a), which requires only a "short and plain statement of the claim." *Michaels Bldg. Co.*, 848 F.2d at 679.  The purpose of the particularity requirement is to provide defendants with fair notice of the substance of plaintiff's claims so that they are able to prepare their Answer. *Bird v. Delacruz*, 411 F. Supp. 2d 891, 895 (S.D. Ohio 2005).  In order to provide this fair notice, a plaintiff must allege, at a minimum, "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id.* (quoting *United States ex rel Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 643 (6th Cir. 2003) (internal quotations omitted).  Failure to plead fraud with particularity is valid basis

upon which a court may grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Evans v. Pearson Enters.*, 434 F.3d 839, 852-53 (6th Cir. 2006).

A review of Allen's Complaint shows definitively that she has not pleaded even the minimum "who, what, where, when, and how" of any alleged misrepresentation.  *See Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)) (internal quotation omitted).  The above quoted paragraph 85 of the Complaint is typical of Allen's fraud allegations—conclusory in nature with no detail as to the specifics of who made the fraudulent statement, when the fraudulent statement was made, where the fraudulent statement was made, or how the statement was part of the sort of fraudulent scheme that Allen contends was afoot here.  To the extent Allen's fraud claim *might* be based upon alleged advertisements or promotional materials touting the windows in question, Allen does not identify the circumstances under which she saw or heard them; nor does she describe with particularity what any such representations were.  As to her claims of active "concealment," Allen does not identify any circumstances under which disclosure should have been made, who actively concealed the facts she claims could have been discovered, or what particular information was available to the unspecified persons and actively concealed.  (Compl. ¶¶ 49, 83.)

Allen's opposition to Andersen's motion to dismiss does nothing to shed light on the allegations in her Complaint.  Allen cites to paragraphs 13 through 19 of her Complaint as the operative allegations showing the "who, what, when, where, and how of her fraudulent concealment claim" (Pl.'s Opp. 8-9, ECF  No. 31), but a review of those paragraphs belies her claim that she has pleaded fraud with particularity.  The allegations are conclusory at best and reveal little to no detail surrounding the actual misrepresentations allegedly made.

35

Allen has failed to plead fraud with the particularity required by Fed. R. Civ. P. 9(b). Andersen's motion to dismiss the fraud claim is therefore well taken.

### E.  Declaratory and Injunctive Relief

Allen's Tenth Claim asserts a purported claim for "Declaratory and Injunctive Relief." (Compl. 30, ECF No. 1.)  Andersen moves to dismiss the Tenth Claim on the basis that (1) the Complaint fails to allege facts to support the relief sought and (2) Allen lacks standing to seek injunctive relief because she has not alleged a threat of future harm.  (Defs.' Mot. 34, ECF No. 24.)

As to Allen's claim for declaratory relief, Andersen's motion to dismiss is denied.  The Declaratory Judgment Act provides that, "[i]n case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Because the Court found above that Allen's claim for breach of express warranty (to the extent based on Andersen's alleged breach of the "repair or replace" obligation) survives a Rule 12(b)(6) dismissal, Allen's claim for declaratory relief likewise remains viable.  *See, e.g., Shurka Aero., Inc. v. Eaton Aero., L.L.C.*, No. 1:08-cv-1565, 2011 U.S. Dist. LEXIS 33489, at *21 (N.D. Ohio Mar. 29, 2011).

As for Allen's "claim" for "injunctive relief," the Court notes that Allen has not technically stated a valid claim.  Injunctive relief is a *remedy* for a claim, not a cause of action unto itself.  *Huntington Nat'l Bank v. Guishard*, No. 2:12-cv-1035, 2012 U.S. Dist. LEXIS 167214, at *15 n.1 (S.D. Ohio Nov. 26, 2012).  Nonetheless, this Court will treat Allen's averments seeking injunctive relief as part of her prayer for relief, even though contained under the allegations of her Tenth Claim.  When treated as such, there is no reason for dismissal of the

36

injunctive relief prayer at this juncture.  Whether Allen may obtain injunctive relief in the form she seeks is an issue for another day.

Andersen's motion to dismiss the Tenth Claim is accordingly denied.

### F.  Motion to Strike Class Claims

In addition to moving to dismiss, Andersen moves to strike the class action claims asserted in Allen's Complaint.  The Court denies Andersen's motion in this respect.

Fed. R. Civ. P. 12(f) allows the Court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Absent from Andersen's motion is an explanation of how the class action allegations fit this description.  Instead, Andersen relies on authority standing for the proposition that a court *may* strike class action allegations *before* a motion for class certification "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."  (Defs.' Mot. 36, ECF No. 24.)  *See Rikos v. Proctor & Gamble Co.*, No. 2:11-cv-226, 2012 WL 641946, at *3 (S.D. Ohio Feb. 28, 2012) (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)).

While the Court *may* strike class allegations prior to a motion to certify, the Court declines to do so at this time.  To be sure, the Court has serious doubts as to Plaintiff Allen's ability to maintain a class action in this case, especially when considering that this Opinion and Order disposes of the vast majority of her claims.  Nonetheless, the Court deems it prudent to assess the propriety of class certification in the context of a fully briefed class certification motion rather than in the context of a motion to strike class claims at the pleading stage.  Should Allen choose to file a motion for class certification notwithstanding the Court's dismissal of most of her claims, the Court will address the propriety of a class action at that time.  *See, e.g., Elliason v. Gentek Building Prods., Inc.*, No. 1:10-cv-2093, 2011 U.S. Dist. LEXIS 94032, at *7-

8 (N.D. Ohio Aug. 23, 2011); *Faktor v. Lifestyle Lift*, No. 1:, 2009 U.S. Dist. LEXIS 47978, at

*5-6 (N.D. Ohio June 3, 2009).

### III.    Conclusion

For the reasons detailed above, this Court **GRANTS IN PART AND DENIES IN**

**PART** Andersen's motion to dismiss and to strike class claims (ECF No. 24) as follows:

- Defendants' motion to dismiss Plaintiff's First Claim (Breach of Contract) is
  **GRANTED**;

- Defendants' motion to dismiss Plaintiff's Second Claim (Breach of Express Warranty) is
  **GRANTED** to the extent the Second Claim is based on an alleged failure to deliver
  products free of defect;

- Defendants' motion to dismiss Plaintiff's Second Claim (Breach of Express Warranty) is
  **DENIED** to the extent the Second Claim is based on an alleged breach of the duty to
  repair or replace;

- Defendants' motion to dismiss Plaintiff's Third Claim (Breach of Implied Warranties) is
  **GRANTED**;

- Defendants' motion to dismiss Plaintiff's Fourth Claim (Ohio Consumer Sales Practices
  Act) is **GRANTED**;

- Defendants' motion to dismiss Plaintiff's Fifth Claim (Ohio Product Liability Act) is
  **GRANTED**;

- Defendants' motion to dismiss Plaintiff's Seventh Claim (Fraudulent Concealment) is
  **GRANTED**;

- Defendants' motion to dismiss Plaintiff's Eighth Claim (Negligent Misrepresentation) is
  **GRANTED**;

- Defendants' motion to dismiss Plaintiff's Ninth Claim (Negligence) is **GRANTED**;

- Defendants' motion to dismiss Plaintiff's Tenth Claim (Declaratory Judgment) is
  **DENIED**; and

- Defendants' motion to strike Plaintiff's class claims is **DENIED**.

**IT IS SO ORDERED.**

<u>**/s/ Gregory L. Frost**</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**